Batchelder *v.* Wendell.

## Batchelder & a. *v.* Wendell & a.

All parties, legally or equitably interested in the relief sought, may be parties to a bill in equity. If a bill is brought to compel parties to indemnify certain of the plaintiffs against liabilities assumed for the common benefit, one, who is bound merely as a guarantor, may be joined as plaintiff; so may a party

Batchelder *v.* Wendell.

with whom the contract of indemnity is made by name, though he is not otherwise interested.

In equity, parties to a contract may maintain their bill against others, though they have contracted both as promissors and promisees.

Where a condition precedent requires that certain money shall be expended in finishing and furnishing a railroad, it is not a sufficient averment of performance, to allege that it was expended in building, finishing and furnishing such railroad.

Where an undertaking to pay is absolute, the guarantor's liability is fixed without demand or notice.

Where the contractors agree to indemnify and secure the other parties against any and all loss or damage, and it is at the same time agreed that certain securities shall be taken for the benefit of the parties, the parties indemnified may maintain their bill, without showing that they have attempted to make those securities available.

In Equity. The bill alleges that on the 24th of June, 1852, the Portsmouth and Concord Railroad corporation had so far constructed their road that cars were running on it to Rowe's Corner, in Hooksett, and men were employed in finishing it to Concord. The corporation had exhausted their means, and could not obtain money, without sureties.

All the plaintiffs and defendants were stockholders in the corporation, and holders of its bonds, and interested in its construction. The facts were stated at a meeting of the corporation, &c., and the complainants and defendants entered into and signed an agreement, whereby they promised six of the complainants, and one A. Ladd, since deceased, (of whose will M. T. Ladd is executrix,) who were then directors of said railroad, that in case they, or any of them should, by themselves or any of them, or with the assistance of other persons, advance, loan to, or hire money for said railroad, the subscribers would indemnify them, or any of them, &c., against loss, &c., not exceeding $1000 each ; each subscriber being severally and not jointly holden for a sum not over $1000, and the money being hired within a year: The engines and freight cars thereafter purchased to be mortgaged to the directors, or some of them, for the money so loaned or hired, and holden for the benefit of all the subscribers; and preferred stock, to the amount of the money loaned or hired, to

be pledged to the directors, or some of them, for the benefit and security of the subscribers:

The money so raised, &c., to be applied: (1,) to finish and furnish said road; (2,) to pay the interest on the mortgage bonds of the corporation; (3,) to pay other liabilities, as the directors should think proper: the agreement not to be binding till $35,000 should be subscribed.

The writing was signed by thirty-five responsible persons, including the complainants and defendants, except the complainant Fletcher, for $1000 each; and was delivered to the complainants to enable them to raise money.

The object of this writing is alleged to be, to save trouble in getting the signatures of the subscribers to every note, and to place the defendants in the same position as if they signed the notes.

The complainants, except Fletcher and Hadley, relying, &c., hired, upon notes signed by them jointly and severally, $27,500, and loaned the same to the railroad, taking notes of the corporation to them, or order, &c.

No part of the principal of these notes is paid, but the interest has been paid and indorsed to May 31, 1855, and the railroad is insolvent.

All the engines purchased in the year following said 24th of June, 1852, were mortgaged to J. W. Pierce and A. W. Haven, two of the directors, to secure said notes, and the mortgages were taken for the benefit of the subscribers.

Preferred stock to the amount above stated was pledged to Batchelder, &c., or some of them, to secure said notes, being 275 shares, of the par value of $100 each, and held for the benefit of the subscribers.

The notes, mortgages and preferred stock are brought into court, ready to be assigned, &c.

All the money loaned, &c., was expended by the directors in building, finishing and furnishing said railroad.

And the directors, within said year, procured $20,000 more,

Batchelder *v.* Wendell.

and expended it in finishing and furnishing said road, and finished and put it in operation.

On the 28th of June, 1852, the directors voted a commission of five per cent. to the subscribers, and part of the subscribers received fifty dollars each for signing, of whom twenty-three are named, and Wendell has sued the corporation for that sum.

In July and August, 1856, all the subscribers were notified and requested by the directors to pay to Haven, for them, their proportion of said $27,500, and Haven was authorized and ready to give a discharge therefor.

Laighton and Gookin, two of the subscribers, have failed and cannot pay.

The defendants pretend they are not bound to pay, because mortgages were not taken, &c., but the contrary is averred ; and because said $27,500 was not applied to finish and furnish said road, but the contrary is averred ; and because they were sureties for the railroad, but the contrary is averred ; and it is alleged that the defendants were interested in the hiring and expenditure of the money, the directors acted as their agents, and are entitled to look to them as principals. The complainants have no interest, personal or pecuniary, in hiring this money, but in common with the defendants. They hired the money of others, and had only the $50, &c., taken in preferred stock, and good for nothing.

They pray an answer, specific performance, that the defendants may pay their proportions, and the shares of Gookin and Laighton, and for other relief.

The defendants demur to this bill, for causes specially assigned, which ·sufficiently appear from the argument of their counsel.

*W. H. Rollins*, for the defendants.

I. Where a court of equity has only limited jurisdiction, the case must appear on the face of the bill to be clearly within that jurisdiction. *May* v. *Parker*, 12 Pick. 34; 2 U. S. Eq. D. 144, 137.

1. The equity jurisdiction of this court is found in the Revised Statutes, ch. 171, sec. 6. The only ground of equity jurisdiction there named, under which there can be any attempt to support this bill, is "in suits to compel the specific performance of contracts." Is this a case where courts of equity would take jurisdiction, solely to compel the specific performance of the contract? We think not. The claim made in the bill amounts simply to an action for the recovery of money. Courts of equity will not decree specific performance of such contracts, and thus make themselves a mere court for the collection of debts. *Sears* v. *Boston,* 16 Pick. 358; 2 U. S. Eq. Dig. 564; 34, 36; 14 U. S. Dig. 209, 5, and 216, 133; 12 do. 227, 136; 10 do. 155, 41; 9 do. 161, 135, and 142; 7 do. 188, 21; *Denny* v. *Gilman,* 26 Maine 149.

II. Hadley and Fletcher are misjoined as plaintiffs. Neither has any right to recover from the defendants, nor any foundation of a claim against them. Hadley, it is true, is alleged to have signed the agreement; but this would make him a defendant, not a plaintiff, if a party at all. Fletcher is not shown to have even any knowledge of the contract. 1 Dan. Ch. Pr. 617, and authorities there cited; *Kerr* v. *Watts,* 6 Wheat. 559; *Haskell* v. *Hilton,* 30 Maine 421; 2 U. S. Eq. Dig. 436, 543, and 435, 515.

This misjoinder is fatal to the bill. 2 U. S. Eq. Dig. 438, 591, 607; 8 U. S. Dig. 138, 420; Story's Eq. Pl., sec. 509.

III. The attempt to hold the defendants as joint promisors, is contrary to the express provisions of the contract, as set forth in the bill.

IV. The contract set out is void, four of the alleged promisors being also promisees, and they cannot contract with themselves.

V. The conditions of the contract, as set out, have not been performed.

1. $35,000 were not subscribed, according to the intent of the contract. The four who are promisees cannot be counted as promisors also.

2. The money, said to have been obtained under the agree-

ment, has not been used in accordance therewith. It appears that the money was to be applied : 1st, to finish and furnish said railroad ; 2d, to pay the interest on the mortgage bonds ; and, 3d, to pay such other liabilities as the directors might think proper. This provision was an important one to the guarantors, for their own security. They were willing to help raise the $35,000, provided it could be applied as agreed upon, so as to put the corporation in a condition to relieve their liability, by earning the money to pay the debts. But the complainants allege that the money was spent in *building*, finishing and furnishing. The word *building* is a word that would cover uses of the money which the guarantors did not contemplate, prior to the payment of the interest on the bonds. The guarantors have an interest in having the coupons on the bonds paid, in order that the corporation might still hold the road, and earn money to relieve them of their liability. Besides, the complainants allege that many of the guarantors are bond-holders, and the desire to obtain the interest on their bonds may have been the great inducement. At any rate, they were entitled to have the money used for the purposes and in the order prescribed, and the complainants, having the control, were bound to see that the money was properly applied.

3. The complainants were bound strictly to comply with all the conditions of the contract, and to show in the bill that they have done so. 2 U. S. Eq. Dig. 590, 555 ; 7 U. S. Dig. 195, 153 ; 14 do. 334, 3.

VI. There are also conditions implied by law in such contracts, none of which have been performed.

·1. No notice was given to the defendants of the acceptance of the guaranty by the complainants. *Adams* v. *Jones*, 12 Pet. 207 ; *Lee* v. *Dick*, 10 do. 482 ; *Bradley* v. *Cary*, 8 Greenl. 234 ; *Tuckerman* v. *French*, 7 Greenl. 115.

2. They were bound to give notice of the amount advanced, in a reasonable time. *Douglas* v. *Reynolds*, 7 Pet. 126 ; *Edmondson* v. *Drake*, 5 do. 624 ; *Clark* v. *Russells*, 7 Cranch 69 ; *Reynold* v. *Douglass*, 12 Pet. 497 ; *Cremer* v. *Higginson*, 1 Mason

340; *Howe* v. *Nichols*, 22 Me. 175; *Norton* v. *Eastman*, 4 Greenl. 521.

VII. The bill shows that the complainants have sustained no damage. There is no allegation that they have paid or been called on to pay the notes. A mere liability to pay is not a breach of the condition to indemnify. *Lyman* v. *Lull*, 4 N. H. 497.

VIII. At most, all the complainants can claim under this contract is, that the respondents should make good any deficiency that may arise after all the security has been exhausted. The respondents have no power over the property said to be mortgaged, nor can they obtain any except by a bill in equity to compel the mortgagees to dispose of the mortgaged property.

The contract, as set out, is that if the complainants will obtain the money, take the security agreed upon, use the money according to the terms of the contract, give notice of the amount advanced, and then, on default of the principal to pay, avail themselves to the utmost of the security they are bound to take, the defendants will make up the loss, if any; and till the complainants have done all this, they have no claim on the respondents.

*Emery & Hatch*, for the complainants.

I. It is alleged that the complainants have not stated a case within the jurisdiction of this court. The agreement set out in this bill is a contract of indemnity. *Tanner* v. *Woolman*, 20 Eng. L. & E. 491; *Duval* v. *Trask*, 12 Mass. 154; *Hall* v. *Thayer*, 12 Met. 130; *Whitney* v. *Grant*, 24 Wend. 82. Courts of equity decree the specific performance of contracts of indemnity. 2 Stor. Eq. 145, sec. 850; *Ranelaugh* v. *Hayes*, 1 Vern. 189; *Champion* v. *Brown*, 6 Johns. Ch. 398; *Chamberlain* v. *Blue*, 6 Blackf. 491; *Pinder* v. *Mathes*, 1 Bro. 52; *Buck* v. *Swazey*, 35 Me. 41. So, also, in cases of a similar character. *Taylor* v. *Neville*, 3 Atk. 384, cited in *Buxton* v. *Lister*; *Ball* v. *Coggs*, 1 Bro. P. C. 140; *Adderley* v. *Dixon*, 1 S. & S. 607; *Withey* v. *Cottle*, 1 ditto 174; *Lee* v. *Rock*, Moseley 318. Especially is this the case if there is any trust connected with

the transaction. Eng. L. & E. 229, *Pauley* v. *Budd.* All the directors are agents and trustees, and acted as such in obtaining the money, as to its expenditure, and as to the sureties taken, especially those directors in whose names the mortgages were taken.

The defendants were bound to contribute for those insolvent, up to the $1,000 signed by each, but at law there is no contribution by those solvent for those insolvent. 1 Stor. Eq. 475, sec. 496. If the complainants were obliged to sue at law, there would be a great multiplicity of suits at great cost. It is a favorite object of a court of equity to prevent a multiplicity of suits. 1 Stor. Eq. 82 ; 1 Fonb. Eq., B, 1, ch. 1, sec. 1, n. f. ; *Middleton Bank* v. *Rus,* 3 Conn. 135 ; *Fellows* v. *Fellows,* 4 Cowen 699.

In the undertaking to get the money, and its appropriation, and securities taken, the complainants and defendants are copartners, or tenants in common. *Holmes* v. *Wiggins,* 1 B. & C. 74 ; *Burley* v. *Harris,* 8 N. H. 236 ; where *Holmes* v. *Wiggin* is recognized as sound law.

And this is a case of the withholding of personal property, where there is not a plain, adequate and sufficient remedy at common law. Comp. Stat., ch. 181, sec. 9.

II. It is said, in the second and third causes of demurrer, that Hadley and Fletcher are not properly joined. All parties, *legally* interested in the subject of a suit, should be made parties — plaintiffs or defendants. 1 Dan. Ch. Pr. 240, n. 2, and cases cited, and 241 ; Stor. Eq. Pl. 74–78, secs. 72, 77 ; *Fellows* v. *Fellows,* 4 Cowen 682 ; *Busby* v. *Littlefield,* 11 Foster (31 N. H.) 197, 8. So those having only an *equitable* interest should be made parties. 1 Dan. Ch. Pr. 242. The cases cited by the defendants only sustain the position that a want of interest in a person made a party, is good ground for demurrer. It is not necessary for the complainants to controvert this position.

III. There is no attempt to hold the defendants jointly. See the prayer of the bill.

IV. The contract is good, though signed by a portion of the

directors. *Haywood* v. *Wingate,* 14 N. H. 77 ; *Burley* v. *Harris,* 8 do. 233 ; *Pitcher* v. *Barrows,* 17 Pick. 363.

All parties who signed were bound ; the objection goes to the remedy only. See authorities last cited.

V. The word *finish,* taken in connection with the facts as to the condition of the road at the time the contract was made, included building a portion of the road, to wit : all that portion not then built or completed.

VI. Notice as alleged was not necessary in this case. *Morse* v. *Bellows,* 7. N. H. 549 ; *Harris* v. *Stevens, Ib.* 454 ; *Lent* v. *Paddleford,* 10 Mass. 230 ; *Train* v. *Gold,* 5 Pick. 380 ; *Johnson* v. *Wilmarth,* 13 Met. 416 ; 2 Am. Lead. Cases 78. The cases cited by the defendants related to the commercial transactions ; and the rule requiring notice is confined to such transactions ; 2 Am. Lead. Cases 77 ; and this rule is not followed in New-York, because it is held to be a departure from the common law. *Whitney* v. *Grant,* 24 Wend. 82 ; *Smith* v. *Dunn,* 6 Hill. 543.

The rule as to notice of the amount advanced, as stated in *Cremer* v. *Higginson,* 1 Mason 340, seems to be practically overruled in *Whitcher* v. *Savage,* 1 Story's Rep. 22.

This is an original undertaking and a contract of indemnity, and therefore no notice is necessary. *Whitney* v. *Groot,* 24 Wend. 82 ; *Beebe* v. *Dudley,* 6 Foster (26 N. H.) 249.

It was not expected by the signers that any notice should be given. All the circumstances connected with the transaction show this. These circumstances may be shown, to determine the character of the instrument. *Bainbridge* v. *Wade,* 1 Eng. L. & E. 239, and cases there cited.

When a notice is necessary it need not be in writing, or in any particular form, but it may be inferred from facts and circumstances. *Reynolds* v. *Douglas,* 12 Pet. 497. As in this case, the defendants, one year and three months after the agreement was made, received compensation for signing it.

No notice was necessary, because the railroad was insolvent

at the time the contract was made, and has been ever since, and all parties knew it. *Beebe* v. *Dudley,* 6 Foster (26 N. H.) 249.

VII. It is not necessary to show that the complainants have paid. They have bound themselves to pay, and may at any moment be called upon. *Ranelaugh* v. *Hayes,* 1 Vern. 189; *Sandford* v. *Allen,* 1 Cush. 473; *Marsh* v. *Day,* 18 Pick. 321; *Lyman* v. *Lull,* 4 N. H. 495; *Parker* v. *Reid,* 9 do. 121; *Gennings* v. *Norton,* 35 Maine 308; *Huntress* v. *Allen,* 20 do. 28.

VIII. The contract provides that the stock and mortgages shall be taken as security for the money loaned, and held for the benefit of all the subscribers. The contract contemplates that the subscribers shall first pay, and then get what they can out of the securities.

It is in the power of this court, upon the case made by the bill, fully to protect them, and afford such relief as the case may require. *Stone* v. *Anderson,* 6 Foster (26 N. H.) 522; *Busby* v. *Littlefield,* 11 do. 193.

BELL, J. By the first objection we understand nothing more can be intended than that the case stated by the complainants is not one proper to be relieved in equity. *Wells* v. *Pierce,* 7 Foster (27 N. H.) 512; *Walker* v. *Cheever,* 35 N. H. 339.

But we think there is no foundation for this suggestion, on the first ground taken by the plaintiff's counsel, that the contract stated is one of indemnity, in which cases it is usual to afford redress by a decree for specific performance. On this point the authorities cited by the counsel are decisive. *Phillips* v. *Berger,* 8 Barb. 527.

II. As a general rule, all parties legally as well as those equitably interested, should be made parties. *Busby* v. *Littlefield,* 11 Foster (31 N. H.) 197.

As the contract is stated in the bill, we are unable to perceive that Hadley, one of the complainants, has any interest but that of a subscriber only. He is not named as one of the directors with whom the agreement was made, and he is not one of those who have procured money for the railroad. It is alleged that he

signed the contract and received the fifty dollars, voted by the directors, for so doing. He stands in the same position as the defendants, and he would seem one to be properly made a defendant.

But while this suit presents in one view a claim, by those who have procured the money for the railroad, for the repayment of that money, it also presents a claim, by those who have agreed to indemnify the borrowers, against those who have joined with them in the contract to indemnify, and who now refuse to perform that contract. Any of the parties who admit their own liability may join in a bill, for the purpose of compelling the other subscribers to perform their agreement. Each of these signers has an interest in compelling the other subscribers to pay their part, since he will be thereby so far relieved from the burden resting on himself. In this view the bill is of the nature of a bill for contribution, and Hadley appears properly as a complainant.

Fletcher was one of the directors, and was, in terms, one with whom the contract was made. Nothing appears to raise any question as to his acceptance of the contract. But he was not a signer of the contract, and he has never taken any part in procuring any loan, or in taking any mortgage or security. He has no claim to make as a subscriber. If he has any right to prosecute the suit, it is because the contract is made with him by name, thus, as is suggested, giving him a legal interest in the contract. 5 Coke 18, b.; Hob. 172; Yelverton 177; Archbold P. & E. 54.

The contract is thus stated: the subscribers named did promise and agree to and with the said Haven, Pierce, Walker, Batchelder and Fletcher, and A. Ladd, since deceased, who were then directors of said railroad, that in case said directors, or any of them, should loan or hire money for the use of said railroad, they would indemnify said directors, all, any, or either of them, so loaning or hiring, &c. This makes Fletcher a party legally interested in this contract, though he did nothing about it, and he is, therefore, properly joined.

III. The prayer of the bill is, that each of the subscribers should be required to perform his agreement, and to pay to the directors his proportion of said $27,500, and to pay his proportion of the shares of Laighton and Gookin, who are insolvent. It is very clear that here is no attempt to hold the defendants jointly. They agree to indemnify, &c., against all loss, &c., to an amount not exceeding $1,000 each; each subscriber to be severally and not jointly holden for a sum not exceeding $1,000.

The plaintiffs claim that the solvent contractors are still bound to make up the deficiency resulting from failure of any of their number, provided the whole amount to be paid by each does not exceed the $1,000 stipulated. At this stage of the case it does not seem to be necessary to consider this question, as the bill is sustainable on other grounds, whether this construction is adopted or not.

IV. Though it is clear that no action can be brought at law upon a contract where some of the promisors are also promisees, yet the authorities cited by the plaintiff show that the contract is not therefore void. And it is a familiar case that a promissory note is written payable to the order of the maker, or one of the makers, and in such a case an indorsee may well recover upon it.

In equity there is no such principle, and parties to a contract may maintain their bill, though they have contracted both as promisors and promisees. *Burley* v. *Harris*, 8 N. H. 237; *Heywood* v. *Wingate*, 14 N. H. 77; 1 Story's Eq. 630; Story on Partnership, sec. 222.

V. It is objected that the conditions of the contract, on the complainants' part, have not been performed, because $35,000 was not subscribed — the promisees, who subscribed, not being counted; but this objection is answered by the answer to the last point. Though they cannot be parties to a suit at law, they are nevertheless bound. And because the money is alleged to have been expended, not in *finishing* and furnishing the railroad, as is stipulated, but in *building*, finishing and furnishing it; and the suggestion seems to be that it may have been applied to other uses, under the word *building*. It is clear that the plain-

tiffs were bound to see to the due application of the money, and to show in the bill that they have done so.

To finish a railroad implies the building of such parts as are unbuilt, and are necessary to be built in order to finish it. It is not, therefore, at once apparent what occasion there was for using this term *building*. Yet as it is used in reference to the money alleged to be raised under this contract, and is not so used in the next averment, respecting the $20,000 alleged to be raised in addition to the $27,500, it is not unjust to the plaintiff to suppose a distinction was intended to be made, and it is clear that if any thing else than finishing can be meant by this word, the averment is insufficient.

VI. It is objected that the conditions implied in law were not complied with.

1. Notice was not given to the defendants of the acceptance of this guaranty by the plaintiffs. But it is answered that no notice was necessary in this case, and we think the authorities cited by the plaintiffs are conclusive on this point.

The contract was in its nature mutual, and the signatures, which attest that the plaintiffs bind themselves by the contract, are equally evidence that they accepted the agreement of other parties, and the contract itself was notice to all of its acceptance. If other notice was required, the vote to allow the guarantors fifty dollars each, was notice enough to those who received the money, and to others who knew of it.

2. It is said notice of the amount advanced was not given in a reasonable time. The allegation of the bill is, that notice was given to each of the subscribers in July and August, 1856, before the suit was brought, December 1, 1856. But it was held in *Beebe* v. *Dudley*, 6 Foster (26 N. H.) 253, that where an undertaking to pay is absolute, notice to the guarantor is unnecessary. His liability is fixed without demand or notice.

It was held in the same case, that when the party for whom the undertaking is made becomes insolvent, so that no advantage can arise to the guarantor by notice being given, no notice is necessary. It must appear that the neglect to give notice has

produced some loss, or prejudice to the guarantor ; otherwise a notice and demand, before the action brought, is sufficient.

In this case, though this is a contract of indemnity, yet it is not of the nature of a guaranty, except in its effect. It was an absolute, unqualified contract to indemnify, and seems undistinguishable from the case of *Morse* v. *Stevens*, 7 N. H. 549. The whole transaction bears upon its face, not a guaranty for the debt of a party expected to pay, but an indemnify to those who should procure money to aid a concern which was totally unable to go forward with its business.

VII. It is said the contract is only to make good any deficiency, after the security stipulated is exhausted. But the plaintiffs deny any obligation to prove payment, and say it is · enough that they have bound themselves to pay, and may at any time be compelled to pay. On one side it is contended that the parties who advance the money are to make the securities taken for it available, as far as practicable, before they call on the subscribers ; while on the other side it is claimed that the securities are taken by the trustees, not for the lenders, but for the subscribers. The terms of the contract are that the subscribers will indemnify and secure the directors, &c., so loaning, &c., against any and all loss or damage for so doing, to an amount not exceeding $1,000 each. The terms are equivocal. To indemnify may import to save harmless ; to secure against a future damage, or penalty; or to make good, to reimburse to one what he has lost. We indemnify a man by giving sufficient surety to make good a future loss, or by actual reimbursement of loss, after it has occurred. Webster's 4to. Dict. It is clear the contracting party is bound by the strongest sense, indeed, by the full meaning of the terms he has used, and we think it a fair construction of this contract, that the subscribers assume to do whatever is necessary to guard the heirs from impending loss, as well as to repair the damage they have sustained. It is not enough that they stand ready to repair the damage, when it had been done. At law they might be liable only for the damages resulting from a breach of the contract, and to the amount of the damage actually sustained,

if we suppose the parties so situated that an action at law could be supported, and the remedy there would be practically available only for the repair of the loss after it has occurred. The authorities cited for the plaintiff seem entirely satisfactory, that the party entitled to indemnity against the payment, is not in equity bound to wait until he has been obliged to pay. It is the duty of the party contracting to indemnify, to do whatever is necessary to guard the party secured, against being compelled to pay. *Burroughs* v. *McNiel*, 2 D. & B., ch. 297 ; *Chamberlain* v. *Blue*, 6 Blackf. 491 ; *Gilbert* v. *Wiman*, 1 Comst. 550.

The security to be taken is manifestly for the benefit of the subscribers, and not of the heirs. " The engines, &c., should be mortgaged to said directors, &c., as security for the money loaned, or hired, as aforesaid, and holden for the benefit of all the subscribers," and they may at once be called upon to pay. *Crocker* v. *Gilbert*, 9 Cush. 134.

The several objections raised by the demurrer are overruled, except the fifth, which may be obviated by an amendment. If not amended, the demurrer on that ground must prevail.