### In re FREEMAN et al.

#### (District Court, N. D. New York. October 7, 1902.)

#### No. 669.

1. BANKRUPTCY—JUDGMENTS IN STATE COURT—EFFECT.
   Judgments obtained by a creditor of a bankrupt in a state court were not final and conclusive prior to the expiration of the time to appeal therefrom, either on the federal courts or on the trustee in bankruptcy, either as to the existence or amount of the creditor's claim.

2. SAME—JUDGMENTS—ACCORD AND SATISFACTION
   Accord and satisfaction may be pleaded as a defense to a judgment, notwithstanding it is a debt of specialty and record.

3. SAME—CONSIDERATION—ENFORCEMENT
   Creditors of a bankrupt recovered judgment in a state court, and thereafter, before the expiration of the time to appeal, and in consideration of the trustee's promise not to appeal, the creditors agreed to accept in settlement two-thirds of the damages fixed by the judgments, together with the costs, to be paid on the trustee's settlement with certain transferees of the property in suit. The trustees did not appeal, and, after the time limited to appeal had expired, the creditors repudiated the compromise, and refused to accept a tender of the amount stipulated. *Held*, that such compromise was not nudum pactum, but that on the expiration of the time to appeal without the trustees appealing, it became executed in part, and a valid accord and satisfaction.

In Bankruptcy.

W. F. Canough, for judgment creditors.

L. L. Waters, for trustee.

¶ 2. See Accord and Satisfaction, vol. 1, Cent. Dig., §§ 15, 25, 32, 38.

RAY, District Judge. J. Irving Freeman and Frank E. Freeman composed the firm of Freeman & Freeman. The firm and the individual partners were adjudged bankrupts. Edgar F. Brown was appointed trustee, and thereafter two actions were brought in the supreme court of the state of New York against said trustee to recover certain property, with damages for the detention thereof, sold by the plaintiffs in said actions to said firm shortly before its bankruptcy. The plaintiffs succeeded in such actions, and judgments were rendered, and entered in the Onondaga county clerk's office February 26, 1902, viz.:

| | | |
|---|---:|---:|
| In favor of Henry H. Roelof against said trustee for the value of certain property and damages for the detention thereof... | $654 84 | |
| Costs ............................................. ....... | 120 30 | |
| | | $ 775 14 |
| In favor of Espenscheid Hat Co. for the value of certain property and damages for the detention thereof................ | $192 78 | |
| Costs .............................................. ... | 117 00 | 309 78 |
| Total ...................................................... | | $1,184 92 |

The defendant had the statutory time—30 days—in which to appeal from these judgments, and appeals were contemplated, and the advisability of such proposed action was discussed by the defendant Brown, as trustee, his attorney, L. L. Waters, and the referee in bankruptcy for that district, D. W. Cameron. The validity of the demands was still in dispute, and an appeal was advised by Mr. Waters, who asserted that such judgments could not be sustained. Of these facts said plaintiffs were advised. On the 15th day of March, 1902, at the suggestion of such referee, who was evidently acting in the interest of the creditors of the estate, the trustee and his said attorney and Mr. Canough, the attorney for the plaintiffs in such actions, met with the referee, and the question of the validity of such judgments, the propriety of appeals therefrom, and the chances of success therein, the cost of such action to the estate, etc., were discussed. As the result of this conference, a verbal agreement was made, whereby the said trustee, with the assent of his attorney and the approval of the referee, promised not to take an appeal from said judgments, or either of them, and to pay to the attorney for such plaintiffs in the case wherein Henry H. Roelof was plaintiff two-thirds of the damages fixed by said judgment, or $436.56, and the full bill of costs, $120.30,—total, $556.86; and in the case wherein said Espenscheid Hat Company was plaintiff two-thirds of the damages as fixed by the judgment, or $128.52, and the costs, less $30, or $87,—total, $215.52, —unless the defendant, said trustee, should be unable to effect a settlement with one Schafer, who had purchased said goods, or a part thereof, of such trustee, subject to such suits in replevin, and who, as the plaintiffs in such judgments assert, had brought an action against said trustee, Brown, which was then pending and undetermined, in which case the defendant Brown, as trustee, was to pay the full amount of the said judgments, and the plaintiffs were to hold one-third thereof and the sum of $30 pending the result of the action of Schafer against said trustee; and, in case said action was determined in favor of said trustee, then the plaintiffs in such judgments

were to retain the full amount thereof, but, in case Schafer succeeded, then plaintiffs were to return said sum so paid over to the defendant on said judgments. It was also agreed, as the plaintiffs in said judgments assert, that this sum should be paid in two or three days. They also assert that their attorney, Mr. Canough, called for the money several times, but that payment was refused. It is plain that the statement or understanding of the attorney for the plaintiffs in such judgments that an action was pending between Schafer and Brown, as trustee, was an error. The truth is that Schafer purchased the title or interest of the trustee in said goods from him with knowledge of the claims of the plaintiffs in said judgments, and subject thereto, and had sold said goods to one Vinney, and the trustee had notified Schafer of the actions above referred to, and had a claim against him for the amount of such judgments in case they were sustained on appeal. This difference of statement is not very material, as the fact is that, as a part of the settlement, the trustee was to see Schafer or Vinney or both, and settle with them, if possible; and the payment by the trustee to Canough for said plaintiffs, and the amount thereof, depended on the settlement to be made or that might be made with Schafer. This explains the delay in making payment and completing the settlement. These demands and so-called refusals to pay were not regarded or treated as a repudiation of the agreement of settlement, for the said plaintiffs, by their attorney, continued to call for the money, and did not, because of nonpayment, declare the agreement of settlement broken by the trustee, and therefore at an end. Before any repudiation of the agreement by said plaintiffs (they always acting by their attorney, Canough), the trustee effected his settlement with Schafer or Vinney, or both, and pending such settlement allowed his time in which to appeal from said judgments to expire, having no notice of any purpose of the plaintiffs in said judgments to repudiate or disclaim the settlement on any ground or for any reason. Such time expired on the 28th day of March, 1902. On the 17th day of April, 1902, the said trustee, defendant in said judgments, tendered to the plaintiffs in said judgments the amount he had agreed to pay, and which they had agreed to accept in full payment and satisfaction of said claims or judgments, both damages and costs, if the defendant would not appeal. Said plaintiffs then refused to accept such money so tendered, and refused to carry out the said agreement. One of the plaintiffs repudiated the agreement soon after the time to appeal expired; the other not until after the tender of payment was made. Motions were then made for leave to issue executions on said judgments, and for orders directing the trustee to pay same in full. These orders were denied by the referee, who made an order or orders directing the trustee to pay the plaintiffs in said judgments, or their said attorney, the said amounts of money agreed upon, to wit, $772.38, on demand, in full payment and satisfaction of said demands represented by said judgments. The matter is now brought before the court for its decision and the opinion of the judge.

It cannot be disputed that the settlement was one proper to be made, was in the interest of the estate and of all concerned, and fair

and equitable. It was made in the presence of the referee, who had the matters in charge, and was approved by him. It was a contract made in open court in settlement of a pending contested claim, and approved by the court. The referee directed that no appeal be taken by the trustee, and directed him to compromise with said Schafer and Vinney. However, this agreement was not reduced to writing, and it may be that it might have been repudiated by either party before the trustee, relying thereon and acting in execution thereof, lost his right of appeal, or surrendered his claim against Schafer or Vinney. Up to that time it was unexecuted, except so far as the trustee had proceeded to effect a settlement with Schafer or Schafer and Vinney. But the moment the time to appeal expired the plaintiffs in the judgments had received the full consideration for their agreement to accept the sums mentioned in full payment and satisfaction of the claims then represented by the judgments, and the agreement became valid and binding, and specific performance might have been enforced. It was the equivalent of a payment made and accepted. The trustee, an officer of the court, acting in the interest of the estate and all creditors, had kept his agreement, waived a right of great value (one that he could not regain), and this he had done without notice or intimation that he was not to receive the full consideration agreed to be paid or given for its surrender. The plaintiffs in such actions had then received their benefit,—one of great value to them,—exoneration from the dangers and expense of appeals. It was not the payment of a lesser sum in satisfaction of a greater, conceded to be due and unpaid, but the surrender of a valuable right,—the right to contest the disputed claims in the appellate courts in the mode and manner prescribed by law,—in consideration that the claimants would accept a sum in money less than that claimed in full satisfaction of the original demands. The trustee also made a compromise settlement with Schafer and Vinney in execution of such agreement with the plaintiffs in such judgments, and surrendered a claim against them. In short, the trustee, acting in behalf of all creditors, and bound by law to protect the estate, with the approval and pursuant to the direction of the referee performed his part of the agreement, and, in effect, surrendered the right to further contest the claims in the courts, and also surrendered a material part of his remedy or cause of action over against Schafer and Vinney, or one of them, in reliance on the promise of the plaintiffs in such actions that, if he would so do, they would accept the sum of $772.38 cash in full payment and satisfaction of such claims and demands then in judgments. The said plaintiffs in such actions then repudiated the agreement, and assert: (1) That "the agreement of March 15, 1902, never having been executed, was nudum pactum, and not binding on either party." (2) That "there can be no accord without satisfaction. Payment of a part for the whole, or an agreement to pay part in satisfaction of the whole, is nudum pactum, and void, unless the amount agreed upon is actually paid and accepted in satisfaction." (3) That "to a debt of specialty and record accord and satisfaction cannot be pleaded." (4) That "the agreement of March 15, 1902, was nudum pactum, not binding, and could not be enforced

by the judgment creditors." (5) That "the judgment of the state court is conclusive upon the federal court as to the existence and amount of the claim. The only jurisdiction of the federal court is to decree the time and manner of payment." The agreement of March 15, 1902, related to two claims asserted by the plaintiffs in the actions referred to against the estate of the bankrupt represented by the defendant, and the validity and justice of which were then disputed by said defendant. These claims had not ripened into final and conclusive judgments, but were still open to the decision of the courts of the state of New York. Whether or not there should be further litigation and consequent expense, was a matter of moment to both parties, and those whose interests were represented by the defendant. The defendant had the right of appeal, and the right to be heard in the courts as to the validity of such claims, both on the law and facts. Therefore the claims, although in judgments, were debts of specialty and record in a limited sense only. At that time these judgments were not conclusive on the federal courts any more than upon the defendant, an officer of that court. They were not final and conclusive so long as the right to appeal therefrom remained. Counsel for the judgment creditors have cited three cases holding that to a debt of specialty and record, such as a judgment, accord and satisfaction cannot be pleaded. This was once the rule, but it is so no longer in the courts of the United States. Bofinger v. Tuyes, 120 U. S. 198, 7 Sup. Ct. 529, 30 L. Ed. 649. Says the court, per Matthews, J., page 205, 120 U. S., and page 533, 7 Sup. Ct.; 30 L. Ed. 649:

"The technical difficulty that there can be no satisfaction and discharge of a judgment or decree, except by matter of record (Mitchell v. Hawley, 4 Denio, 414, 47 Am. Dec. 260), cannot be interposed. At common law actual payment of a debt of record could not be pleaded in bar of an action for the recovery of the debt. This has been changed by statute both in England and in this country, and no reason can be assigned why an accord and satisfaction should not have the same effect."

In the above case a decree had been entered against the defendants. Says the court (page 205, 120 U. S., and page 533, 7 Sup. Ct., 30 L. Ed. 649):

"The right of the defendants to appeal from the decree, and the fact that they had declared their intention to do so, created such a dispute in respect to their liability as made it a proper subject of compromise."

So in the case now before this court the trustee had declared his purpose to appeal, and apprised the plaintiffs of his intention; and that they made the agreement to accept the sum mentioned as a compromise to avoid the appeal cannot be doubted. That such was the purpose is not denied. Hence, within the case cited, it was a proper case for a compromise. It is also substantially beyond dispute that no money was to be paid until a settlement was made with Schafer and Vinney, or had failed, for until that was done the trustee could not know how much he was to pay over. This is clear from the statement of Mr. Canough. There may have been, and probably was, talk of payment within two or three days; but this depended on the settlement with Schafer and Vinney. But delay in the payment or settlement, or both, was assented to, and not made

the basis of a justification for repudiating the agreement, until after the time to appeal had expired. Even after that time had expired, Mr. Canough offered to carry out the agreement so far as the small claim was concerned. To this the trustee could not properly assent, as the agreement was an entire one. It is plain from the case cited that these claims reduced to judgment were the proper subject of a compromise agreement, and that any lawful compromise made should be upheld and enforced by the court, if partly executed by either party; and such party cannot be restored to his rights as they existed at the time the agreement was made. To hold otherwise would be to assist in the perpetration of a great wrong on the creditors of the bankrupts, whose interests are confided to the protection of the courts. That this trustee cannot be restored to his rights is self-evident. The right of appeal and the right to test the liability of the defendant in the tribunals provided by law and the right to proceed against Schafer and Vinney, one or both, are gone. Is there any legal obstacle in the way? The agreement made was lawful, its obligations mutual, and the consideration good, valuable, and beneficial. The trustee performed fully as to one part (the doing of acts), and in due time tendered performance as to the other part of the agreement (the payment of money). The plaintiffs have secured all the advantages and benefits they contracted for in consideration of accepting a lesser sum in money than claimed, and the money they agreed to accept is in court ready to their hand. Performance may be compelled in equity. Phillips v. Berger, 2 Barb. 608; Id., 8 Barb. 527; Wat. Spec. Perf. §§ 43, 107.

This court is not powerless in the premises, and the plea that the judgment creditors are not bound because they refused to accept the money when tendered, after having accepted the benefits which they sought, and in consideration of which they agreed to accept such sum of money, cannot avail them. In the eye of equity the money is now in their possession. The agreement was to accept $772.38, and the waiver and abandonment by the defendant of his right to appeal from the judgments and further contest the claims in payment and satisfaction of the amount specified in the judgments, and by such agreement the value of the waiver and surrender of the right to appeal was fixed at $412.54; and, as the trustee performed to the extent of abandoning the right to appeal, and tendered the balance of the consideration, the plaintiffs' claims were extinguished, except as to the money consideration, and all they can claim is the balance, or $772.38. Kromer v. Heim, 75 N. Y. 578, 31 Am. Rep. 491. Says the court:

"It is the case of an accord partly executed. So far as the plaintiff accepted performance, his claim is extinguished. So far as it was unexecuted, the judgment remained in full force."

That sum was duly tendered and no execution should issue.

The value of the surrender of the right to appeal was fixed by the parties, and that much the plaintiffs have had. Suppose the agreement had been to deliver to plaintiffs one specified horse, and pay $772.38 cash, and the horse had been delivered and accepted, could the plaintiffs demand more than the $772.38? Clearly not. Then,

having had the benefit of the act done by the defendant, who was acting for all the creditors, can the plaintiffs now say, "Such act was of no benefit or value to us, or of less value to us than fixed by the terms of the settlement?" It is clear that, the parties having measured the value of the act done and the value of the benefit received by the performance of such act, the plaintiffs in such judgments are estopped from denying such value or its receipt, and therefore the total amount due and unpaid when the tender was made was the exact amount of the tender which has been kept good. No objection was made as to the form of the tender, and refusal to accept was not placed on the ground that it was by check. In no view of the case can the plaintiffs demand more, and they are not entitled to an execution for the collection of money tendered them, now in court for them, and which they have refused to accept. That the agreement made was valid cannot be doubted. This is true whether we treat these claims as liquidated or unliquidated. If liquidated, the acts to be done and the money to be paid were to be accepted in full payment and satisfaction, and part payment has been made and accepted by the performance of such acts, and an order made by the referee for the payment in full of the balance due, which amount has been tendered, and is waiting acceptance. If unliquidated, before the agreement was made the amount was liquidated by the agreement, and the consideration to be paid in satisfaction fixed, and the defendant trustee has paid and plaintiffs have accepted all but $772.38, and this is all they are entitled to. The original demand is satisfied except that amount, and the court has already directed payment of the balance of the amount originally claimed. In either case the court will not direct, and the plaintiffs in such judgments have no legal or equitable right to demand, double payment of the full amount claimed, or of any part of it. "The giving and acceptance of anything which can be considered of value or benefit to the ju: creditor is a good payment, and a satisfaction to that extent." Douglass v. White, 3 Barb. Ch. 621–624; Foakes v. Beer, 9 App. Cas. 605; Watson v. Elliott, 57 N. H. 511–513. "It is enough that something substantial, which one party is not bound by law to do, is done by him; or something which he has a right to do he abstains from doing at the request of the other party is held a good satisfaction." 57 N. H. 511. The well-settled principles that an accord and satisfaction requires a new agreement, and the performance thereof,—an executed contract founded upon a new consideration; that, if the claim is liquidated, the mere acceptance of a part, with the promise to discharge the whole debt is not enough, for there is no new consideration; that, if the claim is unliquidated, the acceptance of a part and an agreement to cancel the entire debt furnishes a new consideration, which is found in the compromise,—are fully recognized and applied here. Nassoiy v. Tomlinson, 148 N. Y. 329, 330, 42 N. E. 715, 51 Am. St. Rep. 695; Jaffray v. Davis, 124 N. Y. 164, 26 N. E. 351, 11 L. R. A. 710.

But it must be remembered that a creditor with a judgment from which the defendant has the right and power to appeal, the validity and justice of which the defendant disputes, may compromise on any

terms he sees fit, and accept part of his claim in full satisfaction, and be bound thereby. So he may accept a benefit or personal property in full or part payment of the whole amount, or of the amount agreed upon. If he agrees to accept property or a benefit of value, and the remainder in cash, and no value is fixed for the property or benefit conferred, and that part is executed, he must be content with the cash agreed to be paid, for the satisfaction is good and complete so far as executed, so far as performance has been made and accepted, and so far the claim is extinguished (Kromer v. Heim, 75 N. Y. 578, 31 Am. Rep. 491); and, while the whole claim is not extinguished, and there is no satisfaction, except in part, the court will not undertake, and has no power, to put a value on the property delivered or the benefit conferred and accepted in part payment different from that fixed by the parties themselves. Howard v. Norton, 65 Barb. 161. Says the court (pages 169, 170):

"It is only when property is received in satisfaction without any price being agreed upon at which it is to be estimated between them that it becomes a valid accord and satisfaction. Such a delivery and acceptance is held to be binding on the creditor, because the parties have the right to determine for themselves the value of property transferred from the one to the other; and, when once it is determined, they are, in the absence of fraud, bound by such agreement. There is no reason why, if parties so agree, a horse intrinsically worth but $50 may not be received in satisfaction of a debt of $1,000. No tribunal is authorized to repudiate the arrangement and fix a price on the animal for them."

If a judgment creditor accepts delivery of one cow (no value agreed on) in execution of an agreement that he will take such animal in full satisfaction of a judgment for $500, it is an accord and satisfaction,—payment of the judgment. He had the right to exact money in legal tender, but there is no law forbidding him to accept property, much or little, or work or labor, or lawful benefits of any description, at such valuation as the parties place upon them; and, in the absence of an express agreement as to the price, the presumption is that it is the amount of the debt. See Weeks v. Zimmerman, 15 Daly, 226, 4 N. Y. Supp. 609; Pinnel's Case, 5 Coke, 117. So sacred and valuable is the right of appeal from a judgment that it is not abandoned or waived or extinguished by paying the judgment. Hayes v. Nourse, 107 N. Y. 577, 14 N. E. 508, 1 Am. St. Rep. 891. See, also, In re New York, W. S. & B. Ry. Co., 94 N. Y. 287, and Schermerhorn v. Wheeler, 5 Daly, 472.

Again, it is not at all clear that this tender of performance was not all-sufficient in this case, and equivalent to payment and acceptance. The defendant is a trustee appointed to represent all the creditors of the bankrupts' estate. If he succeeded in the actions on appeal, and retained the proceeds of the property to recover which the actions were brought, such proceeds would go to the creditors (less expenses, etc.) He made this composition agreement for the benefit of all, and the creditors assented, and knew the fiduciary relation and representative character occupied by the defendant. It has been held that, where a debtor made a composition agreement with three creditors, and one refused to accept payment according to its terms, there could be no rescission by one without the consent of the debtor,

and that tender of performance by the debtor was, in effect, good performance. Bank v. Kohner, 85 N. Y. 189–195. In Fellows v. Stevens, 24 Wend. 294, it was held that, "as between a debtor and creditor, an 'accord' to accept a less sum than the whole debt is no bar, though satisfaction be tendered; but, if the accord extend to all the creditors of the debtor, it is otherwise." This accord was not made in terms with all the creditors of the bankrupt, but it was made between two creditors of the trustee and the trustee, and he represented all, and these creditors of the bankrupt were, in effect, debtors of the plaintiffs in such actions. In effect, it was a compromise agreement between two creditors on the one part and all their debtors on the other part. Again, as both plaintiffs (creditors) entered into the agreement with the defendant, and both had received the benefit contracted for, it is difficult to see how one alone could withdraw, as he attempted to do, without the consent of the trustee (see Bank v. Kohner, 85 N. Y. 194, and cases there cited), or how the other could withdraw after tender.

There is no evidence of laches on the part of the trustee. The agreement was made March 15th, and on or before the 17th day of April he had effected his settlement with Schafer, and on that day he tendered the plaintiffs the money due them. That the trustee was dilatory in effecting this compromise with Schafer is not shown. Nor does it appear that the plaintiff suffered any loss or inconvenience from the delay. The parties must have contemplated that it would take time to effect that settlement. Neither plaintiff shows any good reason for repudiating the agreement of March 15th, and, as there was no fraud or sharp practice in securing the same, there was no excuse for noncompliance.

The orders of the referee are approved and affirmed.